JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
KAPPE ASSOCIATES, INC.

## DEFENDANTS
CHESAPEAKE ENVIRONMENTAL EQUIPMENT, LLC c/o
INCORPORATION SERVICES, INC., et al.

(b) County of Residence of First Listed Plaintiff  **Frederick County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **Baltimore County**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Paul A. Logan, Esquire, Powell, Trachtman, Logan, Carrle & Lombardo
475 Allendale Road, Suite 200, King of Prussia, PA  19406
610-354-9700

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
　　　Plaintiff

☐ 3  Federal Question
　　　*(U.S. Government Not a Party)*

☐ 2  U.S. Government
　　　Defendant

☒ 4  Diversity
　　　*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                            *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
15 U.S.C. Section 1051, 18 U.S.C. Section 1030
Brief description of cause:
Violation of the Lanham Act, Violation of Computer Fraud & Abuse Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
04/23/2015

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Kappe Associates, Inc., 100 Wormans Mill Court, Frederick, MD  21701

Address of Defendant: Chesapeake Environmental Equipment, LLC, 1519 York Road, Lutherville, MD  21093

Place of Accident, Incident or Transaction:   Pennsylvania/Maryland/Virginia
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐  No☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☐  No☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐  No☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) 15 U.S.C. Section 1051, 18 U.S.C. Section 1030

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*
I, Paul A. Logan, Esquire, counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 4/23/2015   _____ Attorney-at-Law   30119 Attorney I.D.#
NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/23/2015   _____ Attorney-at-Law   30119 Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| KAPPE ASSOCIATES, INC. | : | CIVIL ACTION |
| v. | : | |
| CHESAPEAKE ENVIRONMENTAL EQUIPMENT, | : | |
| LLC c/o INCORPORATION SERVICES, INC., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x )

| | | |
|---|---|---|
| 4/23/15 | Paul A. Logan, Esquire | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-354-9700 | 610-354-9760 | plogan@powelltrachtman.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
## Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KAPPE ASSOCIATES, INC.**<br>**100 WORMANS MILL COURT**<br>**FREDERICK, MD 21701**<br>                    *Plaintiff*<br><br>          **v.**<br><br>**CHESAPEAKE ENVIRONMENTAL**<br>**EQUIPMENT, LLC**<br>**C/O INCORPORATION SERVICES, INC.**<br>**1519 YORK ROAD**<br>**LUTHERVILLE, MD 21093**<br><br>and<br><br>**JASON NORTH**<br>**199 OVERLOOK ROAD,**<br>**MORGANTOWN, PA 19543.**<br><br>and<br><br>**JEFFREY MANCINI and**<br>**KATHLEEN MANCINI**<br>**5609 POWELL GROVE TERRACE**<br>**MIDLOTHIAN, VA 23112.**<br><br>and<br><br>**NATHAN LEYBURN**<br>**2038 BRANDY DRIVE**<br>**FOREST HILL, MD 21050**<br><br>and<br><br>**DANIEL THOMPSON**<br>**1065 LONGWOOD AVENUE**<br>**CUMBERLAND, MD 21502**<br><br>**and**<br><br>**EDWARD J. SEROWKA, SR.**<br>**332 PERSIMMON TRAIL**<br>**LAFAYETTE, IN  47909-6823** | No. |

| and<br><br>**LAKELAND INNOVATECH**<br>**332 PERSIMMON TRAIL,**<br>**LAFAYETTE, IN  47909-6823.**<br>*Defendants* |  |
| --- | --- |

## COMPLAINT

Plaintiff, Kappe Associates, Inc., by its attorneys, as and for its Complaint, alleges the following:

### PARTIES AND JURISDICTION

1.      This Court has jurisdiction pursuant to 28 USC §1331 and §1343, as causes of action asserted in this complaint arise under the laws of the United States.

2.      Jurisdiction is further predicated upon the doctrine of ancillary and pendent jurisdiction under 28 U.S.C.A. §1367.

3.      Venue exists in this District under 28 USC §1391(a), as some of the events which are the basis of these causes of action and which are asserted in this Complaint occurred in Morgantown, PA, which is within this District.

### PARTIES

4.      Plaintiff Kappe Associates, Inc. ("Plaintiff" or "Kappe") is a Maryland corporation with a principal office located at 100 Wormans Mill Court, Frederick, MD  21701.

5.      Defendant Chesapeake Environmental Equipment, LLC ("Chesapeake") is a Maryland limited liability company with its principal place of business located in Forest Hill, MD 21050; the registered agent of Chesapeake is "Incorporation Services, Inc."1519 York Road, Lutherville, MD 21093.

2

6.      Upon information and belief, Chesapeake was formed on or about October 15, 2013.

7.      Defendant Jason North ("North") is an individual with his residence at 199 Overlook Road, Morgantown, PA, 19543.

8.      Defendant North is, and at times relevant to the events asserted in this lawsuit has been, the "president" of Chesapeake.

9.      Defendant Jeffrey Mancini ("Mancini") is an individual with his residence at 5609 Powell Grove Terrace, Midlothian, VA 23112.

10.     Defendant Kathleen Mancini ("Kathleen") is an individual with a current residence at 5609 Powell Grove Terrace, Midlothian, VA 23112.  At all relevant times, Kathleen Mancini was married to Jeffrey Mancini.

11.     Defendant Mancini, is and at times relevant to the events asserted in this lawsuit has been, a "vice-president" of Chesapeake.

12.     Defendant Nathan Leyburn ("Leyburn") is an individual with his residence at 2038 Brandy Drive, Forest Hill, MD 21050.

13.     Defendant Leyburn, is and at times relevant to the events asserted in this lawsuit has been, a "vice-president" of Chesapeake.

14.     Defendant Daniel Thompson ("Thompson") is an individual with his residence at 1065 Longwood Ave, Cumberland Maryland, 21502.

15.     Defendant Thompson was, at times relevant to the events asserted in this lawsuit, employed as a sales associate at Chesapeake.

16.     Defendants North, Mancini, Leyburn and Thompson currently trade and do business as Chesapeake Environmental Equipment, LLC.

3

17.     Defendant Edward J. Serowka, Sr. ("Serowka") is an individual who resides and conducts business at 332 Persimmon Trail, Lafayette, IN 47909-6823.

18.     Defendant Lakeland InnovTech ("Lakeland") is a business entity of unknown composition that conducts business at 332 Persimmon Trail, Lafayette, IN 47909-6823.

19.     Upon information and belief, defendant Serowka is the "president" and owner or sole proprietor of Lakeland InnovTech.

20.     Upon information and belief, Serowka is/was the owner and "president" of EJS Engineering and Design, Inc., ("EJS") an Indiana corporation, with an address of 45 E Buckeye St, Cicero, IN 46034-9664.

21.     At all times relevant hereto, Serowka disregarded the formalities of the corporate structures of Lakeland and EJS, and therefore the liabilities of Serowka are shared by Lakeland and EJS.

## BACKGROUND FACTS

22.     Plaintiff Kappe, at present and for decades prior hereto, has operated as a manufacturers' representative of various manufacturers and sellers of equipment, products and services used in public and private potable water and wastewater treatment plants, pumping stations and related potable water and sanitary sewer facilities.

23.     In addition, Kappe has developed proprietary "KA Systems" "package" wastewater treatment plants which it primarily sells directly to non-municipal entities.

24.     The geographic markets that Kappe has served at all times relevant to this lawsuit have included Pennsylvania, Maryland, Virginia, the District of Columbia, West Virginia and Ohio.

4

25.     Kappe's business involves securing orders for the various equipment, products and services manufactured and/or sold by the businesses it represents in the geographic areas served by Kappe.

26.     Kappe's business involves securing orders for equipment, products and services in regard to replacements, repairs, upgrades or expansions to existing water and wastewater facilities and securing orders in regard to new water and wastewater facilities.

27.     Kappe's business involves developing relationships with manufacturers and sellers of a variety of equipment and services regarding water and wastewater systems.

28.     In addition to developing relationships with manufacturers and vendors of products and services, Kappe's business involved developing relationships with engineers, operators and owners of systems.

29.     Over a period of decades, as a result of considerable investment of time and effort, and at considerable expense, Kappe has developed information as to the characteristics of water and wastewater systems at numerous facilities and of numerous municipal and private owners of facilities.

30.     Such information constituted confidential trade secrets and/or proprietary information belonging to Kappe.

31.     In addition, Kappe also developed confidential marketing and pricing information, which marketing and pricing information is used to competitively quote prices for products and services.

32.     Kappe also developed confidential marketing and pricing information, grounded in knowing what equipment had been purchased by specific customers, knowledge of industry trends and requirements of regulatory agencies, such as the EPA and similar state agencies, and

5

developed knowledge of the pricing of competitive equipment, and the costs of the installation and maintenance of the competitive equipment.

33.     Kappe has incurred substantial costs and expenses in developing the confidential marketing and pricing strategies described above, and has been competitive in the industry for decades.

34.     The possession of such trade secrets and proprietary information was of substantial value to Kappe in being able to anticipate the needs and preference of such customers and such systems, to determine what equipment and services would most effectively address any needs of such customers and facilities in the event any repairs, upgrades, expansions, servicing, replacement or other projects were considered or needed, and to set prices to be bid when purchases were made by owners and operators through public or private bidding, or to set prices and terms when purchases were made through negotiations.

35.     Part of Kappe's business involved utilizing its confidential data base and relationships developing over a period of years, at substantial expense and effort by Kappe, to convince engineers and other individuals responsible for making purchasing-related decisions that the products of the manufacturers and vendors represented by Kappe would meet their needs, and to convince the engineers and others charged with developing bid specifications to draft their specifications so that the products of the manufacturers and vendors represented by Kappe would qualify under the specifications.

36.     Defendants North, Mancini, and Thompson were all previously employees of Plaintiff Kappe.

37.     While they were employees of Kappe, Defendants North, Mancini, and Thompson had access to the confidential trade secrets and customer information of Kappe,

including customer information and information as to pricing. Such confidential trade secrets and customer information were made available to Defendants North, Mancini, and Thompson solely in order to allow them to perform their jobs for Kappe.

38.    As Kappe employees, North, Mancini, and Thompson each owed Kappe the fundamental duties of its agent, including the duty of loyalty to the interest of their principal, Kappe, and the duty to avoid any conflicts between the interests of Kappe and their own self-interests.

39.    In addition, during their employment, North, Mancini, and Thompson were each required to act solely for the benefit of Kappe in all matters within the scope of employment and to avoid all conflicts between their duties to Kappe and their own self-interests.

40.    As Kappe employees, North, Mancini, and Thompson each had a fiduciary relationship with Kappe and owed the highest duties of loyalty and fidelity to Kappe.

41.    These duties continued after the employment relationship between North, Mancini, and Thompson was terminated, in that, North, Mancini, and Thompson were not permitted to breach these continuing duties, such as utilizing Kappe assets, employing confidential information obtained during their employment relationship with Kappe or interfering with the contracts and business relationships that Kappe had been developed with manufactures, engineers and owners or their representatives during their employment.

42.    Although North, Mancini, and Thompson could begin to prepare to compete with Kappe before their employment relationship with Kappe ended, this right did not include the right to contact Kappe's business contacts, such as Serowka, approaching manufacturers with whom Kappe had ongoing contractual relationships, contacting other Kappe employees in order to entice them to leave Kappe, or to assemble Kappe's business information related to ongoing

7

projects and business opportunities and withhold execution on these projects in anticipation of leaving.

43.     As described herein, North, Mancini, and Thompson, together with defendants Leyburn and Serowka (and perhaps others) assembled Kappe confidential and proprietary information prior to North and Mancini's resignation from Kappe, and thereafter used this confidential and proprietary information after North and Mancini's resignation, without Kappe's knowledge or consent.

44.     This confidential and proprietary information was published on Chesapeake's initial version of its website and thereafter used to interfere with the existing relationships between Kappe and the manufactures with which it had contracts, and on projects which had been worked on by North, Mancini and Serowka.

45.     Defendants North, Mancini, and Thompson were advised of and understood that such trade secrets and customer information of Kappe (1) belonged to Kappe, (2) was confidential and proprietary information that was of significant value to Kappe, (3) was not to be disclosed to anyone else and were only to be used to benefit Kappe, and (4) was being made available to them and were to be used only in order to allow them to perform their jobs for Kappe and were to be used only in connection with performing their jobs for Kappe.

46.     In addition to its role as a representative for manufacturers and vendors of products and services, Kappe developed its own designs, plans and related information for the development of small complete wastewater treatment facilities that could be sold as an operational unit or as a "turnkey" facility.  Such facilities are referenced in the wastewater industry as "package plants."

#1447011v6 1121-48

47.     Kappe marketed its package plants under the name "KA Systems" and has copyrighted drawings which included the designs of the KA Systems.

48.     Kappe invested considerable time, effort and expense over an extended period of years to develop the designs, plans and related information regarding its package plants and facilities sold by Kappe under the trade name of KA Systems.

49.     Kappe invested considerable time, effort and expense over an extended period of years to make the name "KA Systems" be known to engineers, operators and owners of wastewater system as facilities that delivered dependable, cost-effective, quality operations.

50.     The designs, plans and related information regarding its package plants and facilities sold under the trade name of KA Systems constituted valuable intellectual property of Kappe.

51.     Defendant Serowka was the primary design engineer on the KA Systems projects but at no time did Serowka have any ownership interest or have any separate right in KA Systems for use, marketing or other purposes.

52.     Kappe made available to Defendants North, Mancini, and Thompson information as to the designs, plans, pricing, costs and related information regarding its package plants and facilities sold under the trade name of KA Systems in order to allow them to perform their jobs for Kappe.

53.     The intellectual property of Kappe and the confidential trade secrets and customer information of Kappe gave Kappe considerable business advantages, including in regard to selling equipment and services to owners and operators of water and wastewater systems, in regard to convincing engineers and designers to use the equipment and products of the manufacturers and vendors represented by Kappe and the KA System products as the basis for

9

design of projects, in regard to convincing engineers and designers to list such equipment and products in specifications for projects as pre-approved equipment and products, and in regard to securing post-installation additional work and sales in regard to replacement parts, maintenance, repair, upgrades, expansions and replacement projects.

54.     Kappe invested considerable time, effort and expense over an extended period of years to develop and promote its own brand name and reputation as a leader in the water and wastewater field, and as an entity that could solve problems and could provide information and products that engineers, operators and owners could rely upon and could include in designs and specifications with assurance that a quality product would be supplied that would address the environmental, energy-efficiency, reliability, durability, odor-control and other needs regarding a project or facility.

55.     Kappe invested considerable time, effort and expense over an extended period of years to develop the knowledge, skill, and visibility of Defendants North, Mancini, and Thompson in the water and wastewater industry.  Such efforts included, but were not limited to, paying the expenses of having them attend tradeshows and seminars, entertain engineers, operators, equipment manufacturers, vendors, and facility owners and officials, including individuals and firms with whom Kappe had existing business relationships and those with whom Kappe was seeking to establish relationships.

56.     Kappe for years had an established business relationship with Serowka.   Under such business arrangement, Kappe supplied Serowka with confidential business and trade information developed by Kappe at its expense as to projects and prospective projects regarding which Kappe had information as to the technical requirements as to the needs of the customer and as to the details of such projects.

10

57.     Under such business arrangement, Kappe supplied Serowka with Kappe's intellectual property, including the KA Systems confidential information developed by Kappe at its expense.

### Facts Common to All Counts

58.     On a date not specifically known to Kappe, but upon information and belief in early 2013, while North and Mancini were still employees of Kappe, some or all of the individual defendants reserved the internet domain name "*firebirdenvironmental.com*" and thereafter utilized this domain name to communicate among one another so as to avoid detection by Kappe of their plans.

59.     Upon information and belief, the domain name "firebirdenvironmental.com" expired in or about December, 2013.

60.     In or about March, 2013, while still employed by Kappe, North, Mancini, Thompson and, upon information and belief, Thompson's wife, "Selena Thompson" circulated the following email, which had as an attachment the plan for the formation of three corporations (i.e. "LLCs") for the purpose of competing with Kappe, approaching and interfering with Kappe employees and Serowka, and interfering with companies with which Kappe had ongoing business relationships (the "Excel File" document referenced in the email is attached hereto as Exhibit "A"):

> "**From:** jnorth@firebirdenvironmental.com
>
> **Date:** March 1, 2013, 10:45:04 AM EST
>
> **To:** "Jeff Mancini" <jmancini@firebirdenvironmental.com>
>
> **Cc:** "Selena Thompson" <sthompson@firebirdenvironmental.com>, "Jason North" <jnorth@firebirdenvironmental.com>, "Daniel Thompson"

11

<dthompson@firebirdenvironmental.com>

**Subject: LLC Plans - Excel File**

See attached file for the (3) LLC plans of action."

61.    In the category of "other to do", set forth in the Excel file, upon information and belief, "Daniel discuss Lakeside with Ed" is a reference to Daniel Thompson discussing "Lakeside' with defendant Serowka.  See Exhibit "A".

62.    At the time of the circulation of the email, Serowka was engaged by Kappe to provide design services related to KA Systems.

63.    Upon information and belief, the reference to "Lakeside" is a specific reference to Lakeside Equipment, Inc., a manufacturer of wastewater equipment located in Bartlett, Illinois. The proposed contact was for the purpose of manufacturing "KA Systems" equipment since the defendants believed, incorrectly, that they could retain Serowka who would then continue the design of "KA System" which they could all market as a product offered by their new company.

64.    In the category of "*other to do*", set forth in the Excel file, upon information and belief, "Jeff [Mancini] investigates Lakeside" was a specific reference to Mancini interacting with Lakeside Equipment, Inc. for the purpose of taking the "KA System" intellectual property and business away from Kappe and thereafter marketing KA Systems as their own.  See Exhibit "A".

65.    In the category of "other to do", set forth in the Excel file, upon information and belief, "Selena [Thompson] sign up for MBE magazine" is a reference to the intended formation of a "minority business enterprise" for the purpose of obtaining business under the guise of a "women business enterprise" in order to obtain business specifically set aside for such *bona fide*

12

WBE/DBE entities in public contracts in order to compete with and take business from Kappe. See Exhibit "A".

66.     In the category of "other to do", set forth in the Excel file, upon information and belief, "Jason [North] read Business Plan Book" was in furtherance of the plans to compete with Kappe and to find additional ways --- ostensibly but mistakenly "legal" ways to compete with Kappe. See Exhibit "A".

67.     In the category of "other to do", set forth in the Excel file, upon information and belief, "Daniel [Thompson] Discuss KA System plan with Lawyer" was a specific acknowledgment of the fact that the defendants knew of Kappe's rights in KA Systems but the defendants Thompson, North and Mancini were attempting to find develop and implement schemes to defraud and divest Kappe of its rights in KA Systems. See Exhibit "A".

68.     As of March 1, 2013, while North and Mancini were employees of Kappe, the defendants all knew of the business relationship between Kappe and Serowka, but conspired to interfere with this relationship, have Serowka affiliate with the other defendants, and Lakeside, in order to divert all KA Systems work from Kappe to themselves, including the KA Systems work being developed by them while Kappe employees and prior to their intended departure.

69.     The defendants all knew that KA Systems was proprietary to Kappe, but they all intended to convert the rights of Kappe to their own use.

70.     As it relates to the scheme to interfere with Serowka, the defendants were successful, in that at times in 2013 and 2014, Serowka, individually and on behalf of his business entities, represented that he was not affiliated with Kappe, but instead affiliated with Lakeside Equipment in discussions with engineers and, upon information and belief, in discussions with

13

those in the same industry as Kappe, including with, inter alia, Kappe's competitor, Sherwood Logan.

71.    Kappe is presently unaware of the relationship of Serowka and Lakeside, but their statements in the industry questioning the ownership, use and marketing of KA Systems specifically interfered with Kappe's ongoing marketing and contracts and damaged Kappe's reputation in the industry, by at least confusing those in the industry of the uncertain status of KA Systems.

72.    During the course of their employment with Kappe, North, Mancini and Thompson all had access to manufacturers with whom Kappe had contracts to be the companies' exclusive sales representative within specific territories.

73.    While still a Kappe employee, and while entertaining a representative of one of the manufactures in Washington, DC, at Kappe's expense, Thompson requested that the manufacture discharge Kappe as its representative in favor of a new entity in which Thompson had an interest.

74.    During this meeting, and while still a Kappe employee, Thompson disparaged the abilities of Kappe employees, stated that they were "old" and not properly and aggressively marketing the manufacturer's equipment and that the manufacturer should leave Kappe.

75.    Thereafter, after the resignation of Thompson, the manufacturer did terminate Kappe as its exclusive manufacturers' representative in the states of Maryland and Virginia.

76.    Prior to October 25, 2013, the date when North and Mancini handed Kappe their letters of resignation, but while acting as Kappe employees, North and Mancini had developed business opportunities on the following projects, which would have resulted in the sales of BioRem, Inc. equipment – one of the manufacturers that Kappe represented:

14

    (a)      Norchester (HRSD) – self-cleaning trench type wet well, contract value: $99,000.00;

    (b)      Cattail Creek PS, MD, contract value: $39,300.00;

    (c)      Patuxent WRF, MD, contract value $504,000.00;

    (d)      Broadwater WRF Influent Pumping Station, MD, contract value $335,000.00;

    (e)      Maryland City, MD, contract value, $365,000.00; and

    (f)      Salisbury MD, contract value $400,000.00.

77.     The anticipated minimum value of the BioRem, Inc. contracts was $1,960,601.00.

78.     North and Mancini handed their letters of resignation to Kappe on or about October 25, 2013.

79.     Almost immediately thereafter, BioRem, Inc. removed from Kappe as its representative in Maryland, Virginia and Delaware and assigned these territories to North and Mancini and Chesapeake.

80.     Kappe first learned of the change of representation of BioRem, Inc. and change to North and Mancini and Chesapeake in or about December, 2013.

81.     Kappe received no commissions on any of the BioRem sales on the projects listed above values at $1,960,601.00.

82.     During the course of their employment with Kappe, North, Mancini, and Thompson had access to the engineers with whom Kappe had developed longstanding substantial business contacts over the years.  These engineers included, but were not limited to:

    (a)      Reiden Engineering;

    (b)      HDR;

    (c)      Atkins Global;

    (d)      O'Brien & Gere; and

(e)   GHD Brown & Caldwell

83.   During the course of their employment with Kappe, and in addition to the BioRem projects listed above, North, Mancini and Thompson had developed and/ or had access to Kappe's proprietary information on other projects in which Kappe had a financial interest and had invested resources developing.

84.   After North and Mancini left Kappe's employment, North, Mancini, Thompson and Leyburn, employed the confidential materials obtained by them while at Kappe to directly compete with Kappe on projects, including those referenced in the preceding paragraphs herein.

85.   As early as March, 2013, Mancini had decided to form at least one, and possibly multiple, entities which would compete with Kappe and leave Kappe's employment in order to compete against it.

86.   Notwithstanding his plan to leave Kappe's employment, Mancini falsely represented to Kappe that it would be of benefit to Kappe if Mancini attended the WEFTEC conference held at McCormick Place in Chicago, IL from October 5-9, 2013.

87.   Mancini attended WEFTEC conference sessions, as an employee of Kappe and at Kappe's expense, that were held between October 5-9, 2013 and October 9, 2013.

88.   Upon information and belief, while Mancini at the WEFTEC conference, Mancini made business contacts and engaged in business in furtherance of his personal and the interests of Chesapeake, all to the detriment of Kappe.

89.   On or about October 25, 2013, North and Mancini both advised Kappe on that they were resigning, effective immediately.  True and correct copies of the resignation letters delivered to Kappe are attached collectively as Exhibit "B."

90.   North and Mancini had given Kappe no advance notice that they were intending to resign.

16

#1447011v6 1121-48

91.     North and Mancini had made their decision to resign from Kappe months before they advised Kappe that they were resigning and had acted as pleaded above in furtherance of their intent to compete with Kappe.

92.     Thompson advised Kappe in early September 2013 that he was resigning.

93.     Thompson had given Kappe no advance warning that he was intending to resign.

94.     Thompson had made his decision to resign from Kappe months before he advised Kappe that he were resigning and had acted, as pleaded above, in furtherance of his intent to compete with Kappe.

95.     While they were still all Kappe employees and after they had made their decisions to resign from Kappe, North, Mancini and Thompson each undertook a course of activity which had the effect of damaging Kappe and Kappe's ongoing contractual and business relationships and Kappe's future contractual and business relationships.

96.     North, Mancini and Thompson each undertook such course of activity knowing that it would have the effect of damaging Kappe and Kappe's ongoing contractual and business relationships and Kappe's future contractual and business relationships.

97.     North, Mancini and Thompson each undertook such course of activity with the intention that it would have the effect of damaging Kappe and Kappe's ongoing contractual and business relationships and Kappe's future contractual and business relationships.

98.     North, Mancini and Thompson each undertook such course of activity with the intention that it would benefit themselves at the expense of and at a loss to Kappe and Kappe's ongoing contractual and business relationships and Kappe's future contractual and business relationships.

99.     While still employees of Kappe, and while still on the payroll of Kappe and while still having the trust of Kappe and having access to Kappe's confidential business information, trade secrets, records and intellectual property, North, Mancini and Thompson, with the knowledge, assistance and cooperation of Leyburn:

a.     Formed Chesapeake as an entity intended to directly compete with Kappe in the same geographic areas and on the same projects and for the same business;

b.     Contacted manufacturers and vendors who were under existing contractual relationships with Kappe and made negative comments as to Kappe's abilities and performance in order to weaken or destroy the relationship such manufacturer or vendor had with Kappe, and to increase the potential that such manufacturer or vendor would leave Kappe;

c.     Contacted manufacturers and vendors who were under existing contractual relationships with Kappe and sought to convince such manufacturers and vendors to end their existing relationships with Kappe and to enter into contractual relationships with Chesapeake;

d.     Approached other Kappe employees and attempted to convince such other employees to leave Kappe, with the intention and hope that such a coordinated, surprise departure of multiple Kappe employees would weaken Kappe, and would both strengthen Chesapeake and would make Kappe a less effective competitor for Chesapeake;

e.     Approached Serowka and sought to have Serowka end his existing business relationship with Kappe and to enter into a new business relationship with Chesapeake, pursuant to which Serowka would now compete against Kappe in regard to the same

customers and the same business and the same projects for which Serowka was already involved for Kappe;

f.       Approached Serowka and sought to have Serowka take intellectual property belonging to Kappe and to use such intellectual property for the benefit of Chesapeake and directly against the ongoing business interest of Kappe;

g.       Contacted engineers and buyers of water and wastewater products and services with whom they were dealing as Kappe representatives and sought to have such engineers and buyers end their existing business relationships with Kappe and to enter into a new business relationship with Chesapeake, including as to projects and purchases regarding which Chesapeake would be competing against Kappe;

h.       Took confidential information and intellectual property belonging to Kappe so that such confidential information and intellectual property could be used by Chesapeake;

i.       Developed and put in place a marketing plan that included, but was not limited to, a webpage and other internet presence for Chesapeake, and created marketing which contained false information both as to Chesapeake and as to Kappe, including false information that Chesapeake was now representing manufacturers and vendors that actually had relationships with Kappe, and that certain long-established Kappe employees were working for Chesapeake, with such marketing being designed to damage Kappe and to draw business away from Kappe and to Chesapeake;

j.       Used Kappe assets to contact prospective new customers and to encourage such prospective customers to enter into contracts and relationships with Chesapeake rather than with Kappe;

19

k.    Took opportunities provided by Kappe and used expense account funds and other assets which had been provided to them by Kappe for the purpose of promoting, expanding and otherwise benefitting Kappe, with North, Mancini, and Thompson utilizing such opportunities, assets and funds to promote and benefit Chesapeake rather than Kappe; and

l.    Disparaged the management of Kappe, including statements which were specifically intended to undercut the confidence of those with current and pending contracts with Kappe and with engineers and owners related to the capabilities of Kappe, including the false representation that Kappe was managed by "old" personnel and that the longevity of Kappe was in doubt.

100.    North, Mancini, Thompson, Leyburn and Chesapeake undertook a course of activity which had the effect of damaging Kappe and Kappe's ongoing contractual and business relationships, as well as Kappe's future contractual and business relationships.

101.    North, Mancini, Leyburn and Thompson took such actions with the intention and understanding that such actions would damage Kappe's reputation, and would adversely affect Kappe in its ongoing business - both with those with whom Kappe already had business and contractual relationships, as well as those with whom Kappe would attempt to develop business and contractual relationships.  Such actions included, as examples only:

a.    Making statements to people in the water and wastewater industry as to Kappe and as to Kappe's actions and abilities which were false, and which adversely impacted Kappe in its ongoing business activities and which damaged Kappe's reputation in the water and wastewater industry;

20

b.      Contacted manufacturers and vendors who were under existing contractual relationships with Kappe and made negative comments as to Kappe's abilities and performance in order to weaken or destroy the relationship such manufacturer or vendor had with Kappe, and to increase the potential that such manufacturer or vendor would leave Kappe;

c.      Contacted manufacturers and vendors who were under existing contractual relationships with Kappe and sought to convince such manufacturers and vendors to end their existing relationships with Kappe and to enter into contractual relationships with Chesapeake;

d.      Approached Serowka and sought to have Serowka end his existing business relationship with Kappe and to enter into a new business relationship with Chesapeake, pursuant to which Serowka would now compete against Kappe in regard to the same customers, the same business and the same projects for which Serowka was already involved for Kappe;

e.      Approached Serowka and sought to have Serowka take intellectual property belonging to Kappe and to use such intellectual property for the benefit of Chesapeake, and directly against the ongoing business interest of Kappe;

f.      Used confidential information and intellectual property belonging to Kappe to benefit Chesapeake; and

g.      Developed and put in place a marketing plan, which included, but was not limited to, a webpage and other internet presence for Chesapeake, and created marketing which contained false information both as to Chesapeake and as to Kappe, including false information that Chesapeake was now representing manufacturers and vendors that

21

actually had relationships with Kappe and that certain long-established Kappe employees were working for Chesapeake, with such marketing being designed to damage Kappe and to draw business away from Kappe and to Chesapeake.

102.     All of the aforesaid conduct continued after North, Mancini and Thompson resigned and, upon information and belief, continues to the present.

### *ACTIVITIES OF SEROWKA, INDIVIDUALLY, AND WITH NORTH, MANCINI, THOMPSON AND LEYBURN*

103.     Serowka undertook a course of activity which had the effect of damaging Kappe and Kappe's ongoing contractual and business relationships and Kappe's future contractual and business relationships.

104.     Serowka took such actions with the intention and understanding that such actions would damage Kappe's reputation, and would adversely affect Kappe in its ongoing business - both for those with whom Kappe already had business and contractual relationships, and those with whom Kappe would attempt to develop business and contractual relationships.

105.     Serowka undertook such course of activity with the intention and objective to benefit himself, and with the intention to harm Kappe as a competitor for the business which Serowka was seeking to acquire and to develop for himself.

106.     Serowka undertook a course of activity in which Serowka utilized intellectual property which belonged to Kappe, without Kappe approval and without compensating Kappe.

107.     Serowka utilized proprietary design information as to the KA System for projects for which Serowka had entered into agreements for his own profit and benefit, and for which Kappe was not involved.

22

108.    Serowka received payments from owners or others regarding projects for which Serowka either had agreed to make payments to Kappe, or for which Serowka utilized Kappe designs, information or intellectual property.

109.    Serowka has never accounted to Kappe for the payments he received or made the payments owed to Kappe.

110.    Upon information and belief, Kappe asserts that North, Mancini, Thompson, Leyburn, Chesapeake and Serowka acted in concert and in conspiracy with each other in regard to their actions as set forth in this complaint, including acting in concert to harm Kappe, to utilize for their respective interests and for their mutual interest the assets, confidential information, opportunities and intellectual property of Kappe.

111.    Upon information and belief, Kappe asserts that North, Mancini, Thompson, Leyburn, Chesapeake and Serowka acted in concert and in conspiracy with each other in an effort to have the combined effects of their concerted action both strengthen their own business interest and ventures, at the expense and to the detriment of Kappe.

## COUNT I:   BREACH OF CONTRACT
### Against Defendants North, Mancini, and Thompson

112.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

113.    Defendants North, Mancini, and Thompson each had an employment agreement with Kappe under which each Defendant agreed to perform the duties of their employment, and under which Kappe agreed to pay the Defendants for their services.  Each such employment agreement was oral.

114.    By virtue of the foregoing, North, Mancini, and Thompson each breached their obligations under their respective employment agreements with Kappe, including, *inter alia*, their duty of loyalty and the implied covenant of good faith and fair dealing.

115.    By virtue of the aforesaid conduct and breaches, Kappe has been and will continue to suffer the damages claimed herein.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully demands judgment in its favor and against Defendants Jason North, Jeffrey Mancini, and Daniel Thompson, jointly and severally, for compensatory damages for compensatory damages in the amount of $878,392 representing the disgorgement of the compensation and benefits paid to them while their breaches continued, foreseeable and recoverable consequential damages reasonably calculated to be in excess of $1.0 million, punitive damages, and costs, together with such other relief as the Court deems appropriate.

## COUNT II: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### Against All Defendants (except Kathleen Mancini)

116.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

117.    Kappe had a reasonable basis to expect that its ongoing contractual relations with the manufacturers and vendors which it represented and with the engineers, operators, municipal entities and facility owners with whom it had established relationships regarding sales of goods and services would continue, if not for the improper and unlawful actions and efforts of the Defendants.

118.     As a result of the matters set forth in this Complaint, each of the Defendants has intentionally interfered with the existing contractual relationships of Kappe and have unlawfully diverted clients and business from Kappe.

119.     Kappe has suffered significant losses due to such improper actions.

120.     Each of the Defendants has engaged in outrageous conduct and has engaged in the aforesaid conduct maliciously, with the intention of harming Kappe and with reckless disregard for the rights and interests of Kappe.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully demands judgment in its favor and against Defendants Jason North, Jeffrey Mancini, Daniel Thompson, Nathan Leyburn, Edward J. Serowka, Sr., and Chesapeake Environmental Equipment, LLC, jointly and severally, for compensatory and consequential damages in amount reasonably estimated to be in excess of $1.0 million, punitive damages, and costs, together with such other relief as the Court deems appropriate.

## COUNT III: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

### Against All Defendants (except Kathleen Mancini)

121.     Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

122.     As a result of the matters set forth in this Complaint, each of the Defendants has intentionally interfered with the prospective contractual relationships of Kappe and have unlawfully diverted clients and business from Kappe.

25

123.    Each of the Defendants has engaged in outrageous conduct and has engaged in the aforesaid conduct maliciously, with the intention of harming Kappe and with reckless disregard for the rights and interests of Kappe.

124.    Kappe has suffered significant losses due to such improper actions.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully demands judgment in its favor and against Defendants Jason North, Jeffrey Mancini, Daniel Thompson, Nathan Leyburn, Edward J. Serowka, Sr., and Chesapeake Environmental Equipment, LLC, jointly and severally, for compensatory and consequential damages in an amount currently not totally calculable but with minimum losses of $350,000 in lost "replacement parts" revenue, alone, and other damages reasonably estimated to be in excess of $1.0 million, punitive damages, and costs, together with such other relief as the Court deems appropriate.

## COUNT IV – VIOLATION OF THE LANHAM ACT
### Against All Defendants (except Kathleen Mancini)

125.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

126.    Soon after Mancini and North left Kappe's employment, Chesapeake published a "Line Card" and other information on its website.

127.    Chesapeake's initial publication of its website include photographs and depictions which were intended to suggest capabilities of defendants Jason North, Jeffrey Mancini, Daniel Thompson and Nathan Leyburn, as well as Chesapeake.

128.    Chesapeake's initial publications on its website were false, in that they included photographs and depictions which were not the work of Chesapeake or any of its principals.

26

129.   The website falsely suggested capabilities and experience of Defendants which none of the Defendants possessed.

130.   Each Defendant made statements and representations in regard to the sale of goods and of services in interstate commerce.

131.   Kappe and each of the Defendants are engaged in the sale of equipment and services sold in interstate commerce.

132.   The goods and services which are the subject of the transactions and actions set forth in this Complaint, and which are the subject of the intellectual property of Kappe involved in this Complaint and which were involved in the diversion of opportunities and in the statements set forth in this Complaint, are sold in interstate commerce.

133.   The statements and representations were communicated across state lines.

134.   Such statements and representations constitute commercial advertising or promotion under the Lanham Act.  15 USC §1051, *et seq.*

135.   As a result of their actions, Defendants North, Mancini, Leyburn, Thompson, and Chesapeake have unlawfully diverted clients and business from Kappe by their deceptive and unlawful conduct, unfair trade practices, and other unlawful conduct.

136.   As a result of his actions, Serowka has unlawfully diverted clients from Kappe by the infringement and violation of Kappe's intellectual property rights, deceptive and unlawful conduct, unfair trade practices, and other unlawful conduct.

137.   As a result of the foregoing, Kappe has suffered damages and its rights and interests have been damaged in the manner described above.

138.   Section 1125(a) (1) (B) of the Lanham Act provides as follows:

27

(1) Any person who, on or in connection with any goods or services … uses in commerce any word, term, name, symbol, or device, or any combination thereof, … , false or misleading description of fact, or false or misleading representation of fact, which

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

139.    The Defendants each have made statements and representations as to Kappe and as to Kappe's abilities and actions which were false, and which deceived customers of Kappe, including manufacturers and vendors with whom Kappe did business and engineers and buyers of products to which Kappe sold and attempted to sell products and services, and which were of a nature that they were likely to have deceived a substantial number of persons who heard such statements and representations.

140.    Defendants North, Mancini, Thompson, Leyburn and Chesapeake have made statements as to Chesapeake and as to the products which Chesapeake represented and could supply which were false, which were deceptive, and which were of a nature that they were likely to have deceived a substantial number of persons who heard such statements and representations.

141.    Defendant Serowka has made statements as to the products which he represented he could supply, including his right to use the KA Systems designs and proprietary information and intellectual property, and the ownership of the designs and intellectual property that was the basis for the equipment and services which Serowka was offering for sale and which he was representing he could supply, which statements and representations were false, which were

28

deceptive, and which were of a nature that they were likely to have deceived a substantial number of persons who heard such statements and representations.

142.    The deception and the false statements and representations of all Defendants were material in that they were likely to influence, were intended to influence and did influence purchasing decisions.

143.    The goods that were the subject of the statements and representations were good in interstate commerce.

144.    The false statements and representations were of a nature that they were likely to cause injury, and should have been and were known to the defendants as being likely to cause injury.

145.    The false statements and representations did cause injury to Kappe.

146.    The Defendants were confronted with their illegal conduct.  A true and correct copy of a letter sent on behalf of Kappe to the defendants is attached as Exhibit "C."

147.    In reply and admitting their illegal conduct, Defendants changed the website by removing some of the offending materials, including the misleading photographs.

148.    Kappe in entitled to be compensated for all of its damages under the Lanham Act. Such damages include all types of damages permitted under the Lanham Act, including 15 U.S.C. §1117, including counsel fees, direct damages and statutory enhanced damages.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully demands judgment in its favor and against Defendants Jason North, Jeffrey Mancini, Daniel Thompson, Nathan Leyburn, Edward J. Serowka, Sr., and Chesapeake Environmental Equipment, LLC, jointly and severally, for compensatory and consequential damages reasonably estimated to be in excess of $1.0 million, punitive damages, attorneys' fees, damages enhanced pursuant to the Lanham Act,

29

including 15 U.S.C. §1117, and costs, together with such other relief as the Court deems appropriate.

## COUNT V - BREACH OF FIDUCIARY DUTIES

### Against Defendants North, Mancini, and Thompson

149.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

150.    At all times while they were employees of Kappe, North, Mancini, and Thompson owed a fiduciary duty to Kappe.

151.    While employees of Kappe, North, Mancini and Thompson individually, collectively, and in concert with others, including, but not limited to, Serowka and Weyburn, acted in a manner that constituted a breach of their fiduciary duties each owed to Kappe.

152.    Such breaches of fiduciary duties included, but were not limited to:  [a] undertook a course of activity knowing that it would have the effect of damaging Kappe and Kappe's ongoing contractual and business relationships and Kappe's future contractual and business relationships, [b] failed to take actions that were within the scope of their respective duties and responsibilities with Kappe  and that were their responsibility and obligation to perform to advance the interests of Kappe and to perform the duties of their employment, [c] diverted business opportunities from Kappe and to their personal interests, including to benefit Chesapeake, [d]  made false and defamatory statements as set forth elsewhere in this complaint, [e] either used funds provided by Kappe or submitted expense statements or bills to Kappe for actions taken not to benefit Kappe, but to benefit themselves to the detriment of Kappe, including using Kappe funds and accounts to benefit Chesapeake, [f] failing to protect and to promote the interests of Kappe as required by the positions with Kappe, [g] engaging in actions

30

and in making decisions that constituted a conflict of interests between Kappe for whom they were employed and by whom they were being paid to promote Kappe's interests and their own interests, including their interest in developing Chesapeake, and [h] taking such other actions as set forth in this complaint.

153.   North, Mancini, and Thompson took the actions knowingly and intentionally and with the intent to benefit them at the expense of Kappe.

154.   Kappe has suffered harm to its reputation, has suffered economic losses, and will suffer further economic losses in the future due to the actions and breaches of duty by North, Mancini and Thompson.

155.   Kappe is entitled to the repayment of all salaries and benefits furnished to North, Mancini and Thompson which were fraudulently obtained from Kappe when each defendant was acting contrary to their fiduciary duties.

156.   The actions of North, Mancini, and Thompson were willful, were done in bad faith and constitute outrageous conduct.  Such actions warrant the imposition of punitive damages in addition to compensatory damages.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully demands judgment in its favor and against Defendants Jason North, Jeffrey Mancini and Daniel Thompson, jointly and severally, for compensatory damages in the amount of $878,392 representing the disgorgement of the compensation and benefits paid to them while their breaches continued, other compensatory and consequential damages reasonably estimated to be in excess of $1.0 million, punitive damages, and costs, together with such other relief as the Court deems appropriate.

31

## COUNT VI: CIVIL CONSPIRACY

### Against All Defendants (except Kathleen Mancini)

157.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

158.    The Defendants each took the actions set forth knowingly and intentionally and with the intent to benefit them, at the expense of Kappe.

159.    Kappe has suffered harm to its reputation, has suffered economic losses, and will suffer further economic losses in the future due to the actions of each Defendant.

160.    The actions of the Defendants were willful, were done in bad faith and constitute outrageous conduct.  Such actions warrant the imposition of punitive damages in addition to compensatory damages.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully demands judgment in its favor and against Defendants Jason North, Jeffrey Mancini, Daniel Thompson, Nathan Leyburn, Edward J. Serowka, Sr., and Chesapeake Environmental Equipment, LLC, jointly and severally, for compensatory and consequential damages reasonably estimated to be in excess of $1.0 million, punitive damages, and costs, together with such other relief as the Court deems appropriate.

## COUNT VII: FRAUD

### Against All Defendants (except Kathleen Mancini)

161.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

162.    The actions of each Defendant constitute fraud by such Defendant.

32

163.    In their own actions and failures, Defendants North, Mancini, Leyburn and Thompson were each acting as the agent of and on behalf of Chesapeake.

164.    Chesapeake has benefited and has ratified the actions and failures of Defendants North, Mancini, Leyburn and Thompson.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully demands judgment in its favor and against Defendants Jason North, Jeffrey Mancini, Daniel Thompson, Nathan Leyburn, Edward J. Serowka, Sr., and Chesapeake Environmental Equipment, LLC, jointly and severally, for compensatory and consequential damages reasonably estimated to be in excess of $1.0 million, plus $878,392 representing the disgorgement of the compensation and benefits paid to them while their fraud continued, punitive damages, and costs, together with such other relief as the Court deems appropriate.

## COUNT VIII: FRAUD, CONVERSION AND BREACH OF CONTRACT
## AGAINST SEROWKA

165.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

166.    Serowka has received payments from owners and others on projects for which Serowka and Kappe were engaged in joint business efforts.

167.    As part of the agreements between Serowka and Kappe as to joint activity on such projects, Serowka was given permission by Kappe to utilize the KA System designs belonging to Kappe and other confidential information and intellectual property belonging to Kappe.  As part of such agreements, Serowka had agreed to make payments to Kappe from the funds Serowka received from the others and others involved in such projects.

33

168.    Serowka has failed and refused to make payment to Kappe pursuant to the agreements regarding such projects.

169.    Serowka has taken and kept for his own use the funds that belonged to Kappe.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully demands judgment in its favor and against Defendant Edward J. Serowka, Sr. for compensatory and consequential damages in excess of $100,000, punitive damages, and costs, together with such other relief as the Court deems appropriate.

## COUNT IX:   ACTION FOR AN ACCOUNTING

### Against All Defendants (except Kathleen Mancini)

170.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

171.    North, Mancini, Thompson, Leyburn and Chesapeake have tortiously diverted business opportunities from Kappe to Chesapeake.

172.    Kappe is entitled to the profits that were received by North, Mancini, Leyburn, Thompson and Chesapeake from the business opportunities which belonged to Kappe and which were improperly diverted to Chesapeake.

173.    Because of the improper conduct of North, Mancini, Leyburn, Thompson and Chesapeake, Kappe is currently unaware of the full amount of the business and assets and profits that North, Mancini, Leyburn Thompson and Chesapeake have diverted from Kappe.

174.    Kappe is entitled to all the payments and profits that have been received by Serowka from the business and sales which Serowka secured using the intellectual property that belonged to Kappe, which includes projects that Serowka and Kappe had agreed to work together, and includes projects and sales made by Serowka utilizing the Kappe KA System

34

designs and other Kappe proprietary information and intellectual property, without Kappe's approval or permission.

175.   Because of the improper conduct of Serowka, Kappe is currently unaware of all use made by Serowka of the Kappe assets, information and intellectual property, and Kappe is unaware of full amount that Serowka has received from Serowka's use and of the full amount owed by Serowka to Kappe.

176.   Kappe is entitled to a full accounting of the amounts which have been received by North, Mancini, Leyburn, Thompson or Chesapeake based upon the business and assets that have been diverted from Kappe.

177.   Kappe is entitled to a disgorgement by North, Mancini, Leyburn, Thompson and Chesapeake of all proceeds and profits which any of them have received from the business and assets that have been diverted from Kappe or has received from the business in which any improper and unauthorized use was made of Kappe's designs, confidential information or intellectual property.

178.   Kappe is entitled to a full accounting of the amounts which have been received by Serowka based upon the payments received from projects on which Serowka had agreed to make payment to Kappe and based upon the payments received and the business secured through Serowka's improper and unauthorized use of Kappe's designs, confidential information, and intellectual property.

179.   Kappe is entitled to payment of all amounts owed to Kappe on projects or sales regarding projects which Serowka and Kappe had agreements and a disgorgement by Serowka of all proceeds and profits which he has received from the business in which he has made any

35

improper and unauthorized use of Kappe's designs, confidential information or intellectual property.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully demands that this Honorable Court enter a judgment pursuant to which:

- Plaintiff Kappe Associates, Inc. receives a complete accounting of all amounts which have been received by Defendant Jason North, Jeffery Mancini, Nathan Leyburn, Daniel Thompson or Chesapeake Environmental Equipment, LLC based upon any business or assets that have been diverted from Plaintiff Kappe Associates, Inc. and from all business in which any improper and unauthorized use was made of Kappe's designs, confidential information or intellectual property.

- Defendants Jason North, Jeffrey Mancini, Nathan Leyburn, Daniel Thompson and Chesapeake Environmental Equipment, LLC are each required to disgorge to Plaintiff Kappe Associates, Inc. all payment and all profits which any of them have received from the business and assets that have been diverted from Kappe Associates, Inc. and from all business in which any improper and unauthorized use was made of Kappe's designs, confidential information or intellectual property.

- Plaintiff Kappe Associates, Inc. receives a complete accounting of all amounts which have been received by Defendant Edward J. Serowka, Sr. from any transaction or business in which Defendant Edward J. Serowka, Sr. agreed to make payment to Kappe Associates, Inc. and from any transaction or business in

36

which Defendant Edward J. Serowka, Sr. has made from any improper and unauthorized use of Kappe's intellectual property.

- Defendant Edward J. Serowka, Sr. is required to disgorge to Plaintiff Kappe Associates, Inc. all payment and all profits owed to Kappe Associates, Inc. and all payment and all profits which Defendant Edward J. Serowka, Sr. has received from any improper and unauthorized use of Kappe's designs, confidential information or intellectual property.

together with costs and such other relief as the Court deems appropriate.

## COUNT X – FRAUD
## KAPPE v. JEFFERY AND KATHLEEN MANCINI

180.   Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

181.   Prior to June, 2012, Mancini and Kathleen lived at 36 Elwood Drive, Smyrna, DE.

182.   At all relevant times in 2012, Mancini was a Kappe employee.

183.   At all times relevant hereto, Mancini possessed and agreed to Kappe's published policy on the reimbursement of expenses for relocation, *viz.*, that if an employee is reimbursed by Kappe for costs and expenses related to relocation and subsequently leaves Kappe's employment, funds paid to or on behalf of the employee are to be repaid to Kappe.

184.   Mancini requested that Kappe pay for Mancini's relocation to Virginia whereat Mancini represented that he would assume responsibility for Kappe's Virginia sales territory.

37

185.    At Mancini's request, Kappe paid to Mancini and for the intended benefit of Kathleen, the co-owner of their jointly owned residence, funds to enhance the marketability of their residence in Maryland.

186.    Kappe additionally dispersed tax "make-up" money to Mancini in April of 2013.

187.    Prior to April, 2013, Mancini had already started to compete with Kappe as set forth above, but nevertheless took the funds from Kappe.

188.    Upon information and belief, Kathleen was at all times relevant hereto aware of the actions of Mancini, the formation of Chesapeake and some or all of the conduct by Mancini alleged herein.

189.    Both Mancini and Kathleen were the recipients of these funds and used the funds for the benefit of jointly owned assets.

190.    Mancini resigned from Kappe's employment in October 2013.

191.    Mancini with the consent and in concert with Kathleen knowingly and intentionally made false representations to, and concealed facts and information from Kappe, as set forth above, for purposes of inducing Kappe's reasonable reliance thereon.

192.    Kappe reasonably relied on the representations of Mancini.

193.    Upon information and belief, Kathleen was fully aware of all the actions of her husband.

194.    As pleaded in detail above, Mancini and Kathleen falsely and intentionally represented that the relocation of their home to Virginia was for the benefit of Kappe.

195.    Mancini and Kathleen engaged in the scheme to obtain funds from Kappe through misrepresentations of their current intentions and statements that the move to the state of Virginia was for the benefit of Kappe while specifically knowing that Mancini and the other

38

named defendants had already put into motion the plan to leave Kappe, take Kappe business and act as pleaded above.

196.   Upon information and belief, all of the conduct of Mancini and Kathleen was undertaken with the specific intent to defraud Kappe.

197.   Kappe reasonably and foreseeably relied upon Mancini's and Kathleen's misrepresentations and concealments, thereby suffering the damages as claimed herein.

198.   Mancini and Kathleen acted maliciously, and/or with reckless disregard for Kappe's rights for the reasons and in the circumstances described above.

**WHEREFORE**, Kappe Associates, Ltd. demands judgment against Defendants Jeffrey and Kathleen Mancini in an amount in excess of $75,000 consisting of $45,000 in moving expenses and the reimbursement of costs and expenses, plus interest and costs, plus punitive damages, if legally permitted, and such other relief as the Court may deem appropriate.

## COUNT XI

### Unjust Enrichment; Imposition of Constructive Trust

### Against All Defendants (except Kathleen Mancini)

199.   Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

200.   As set forth above, all Defendants knew that Kappe had the rights in KA Systems and to the revenues respecting the representation of the manufactures and on the projects and contracts diverted by the Defendants and they nevertheless took the actions described herein.

201.   As set forth above, all Defendants fraudulently transferred and concealed the Kappe's assets unlawfully, without justification, for no or inadequate consideration, so as to

unlawfully retain the benefit of Kappe's assets for themselves, knowing that by so doing they were violating their obligations to and the lawful rights of Kappe.

202.   In view of the foregoing, it would be unconscionable to permit the Defendants to retain any benefits of the Defendant's diverted opportunities and misappropriated Kappe assets.

203.   Based on the foregoing, all Defendants have been unjustly enriched.

204.   In email exchanges among some of the Defendants, their respective liabilities were acknowledged among themselves and some Defendants indicated an intent to form new entities and to transfer assets to these entities in order to conceal their assets from execution and to hide the assets from Kappe.

205.   As a result of the foregoing, the Court should impose a constructive trust on the Defendants' assets and all proceeds therefrom, and award such relief as is necessary to secure such assets and proceeds for the benefit of Kappe.

WHEREFORE, Kappe requests an Order of Court, punishable upon violation by contempt sanctions and such other relief as permitted by law, requiring, *inter alia:*

(a)      that every Defendant provide a full and complete accounting in respect to all of their activities, the use of the assets and opportunities of Kappe they transferred as aforesaid, the use of KA Systems rights and the proceeds therefrom;

(b)      that a constructive trust for the benefit of Kappe be imposed on all of the assets of the Defendants as aforesaid, and the proceeds therefrom, and that the Defendants be ordered to pay or transfer the assets to Kappe and make such assets available for execution by Kappe;

(c)      that all Defendants be enjoined from any disposition of their assets and that appropriate safeguards be imposed to secure such assets;

#1447011v6 1121-48

(d)     that a receiver be appointed at the Defendants' sole expense to take charge of Chesapeake and all related entities or subsidiaries to which Chesapeake or any of the Defendants' assets have been transferred, until the transferred assets are returned to Kappe and made available for execution by Kappe;

(e)     that such other relief as is appropriate under the circumstances be granted.

In addition, Kappe requests judgment against all Defendants, jointly and severally, in an amount still to be determined, plus interest, costs and attorneys' fees as authorized by applicable law, plus punitive damages, and such other relief as permitted by law.

## COUNT XII – TRESPASS TO CHATTELS

### Against Defendants Mancini, North, Serowka and Thompson

206.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

207.    Mancini, North, Serowka and Thompson took the data and information located on the Kappe computers in their possession.

208.    Some or all of such data (further details being unknown to Kappe because of Mancini's, North's, Serowka's and Thompson's concealments and spoliation) existed only on the computer in Mancini's, North's, Serowka's and in Thompson's possession.

209.    As a direct and proximate result of Mancini's, North's, Serowka's and Thompson's actions, Kappe has suffered damages, and is otherwise entitled to the relief claimed herein.

41

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully requests judgment against Mancini, North, Serowka and Thompson, for compensatory damages, punitive damages, costs of suit, equitable relief, and all other relief the Court deems appropriate.

## COUNT XIII – PROCURING INFORMATION BY IMPROPER MEANS

### Against Defendants Mancini, North, Serowka and Thompson

210.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

211.    By virtue of the foregoing, Mancini, North, Serowka and Thompson have committed the tort of procuring information by improper means, as described in the Restatement (Second) of Torts §759 in that, *inter alia*, Mancini, North, Serowka and Thompson took proprietary and confidential data and information owned by Kappe from an Kappe computer, concealed his activities by obtaining, deleting and altering the data on Kappe's computer, and commenced the employment with Chesapeake as detailed above, for whose benefit, it is believed and averred, Mancini, North, Serowka and Thompson took the data and information.

212.    As a direct and proximate result of Mancini's, North's', Serowka's and Thompson's actions, Kappe has suffered damages, and is otherwise entitled to the relief claimed herein.

213.    WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully requests judgment against Defendants Mancini, North, Serowka and Thompson, for compensatory damages, punitive damages, costs of suit, equitable relief, and all other relief the Court deems appropriate.

#1447011v6 1121-48

## COUNT XIV – VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT

### Against Defendants Mancini, North, Serowka, Thompson and Chesapeake

214.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

215.    At all material times, Kappe's computers were utilized in interstate commerce.

216.    Mancini's, North's', Serowka's and Thompson's conversion and destruction of Kappe data and information, as described herein, including, *inter alia,* their copying of data and covering up the use on the Kappe computer, converted and  destroyed Kappe's data and information and changed the functionality of the Kappe computer, and in all respects exceeded Mancini's, North's and Thompson's authorized access.

217.    Mancini's, North's, and Thompson's conduct was done knowingly and with intent and effect of defrauding and harming Kappe as set forth above.

218.    Through the aforesaid conduct, Mancini, North, Serowka and Thompson obtained valuable data and information.

219.    Kappe has incurred costs in for purpose of investigating and remedying the damage caused by Mancini, North and Thompson.

220.    The full value of the data and information taken by Mancini, North and Thompson cannot be determined because of their concealment and spoliation and will be further determined after discovery, but the fact that Mancini, North and Thompson dishonestly and unlawfully concealed what they took and covered up their actions by attempting to "wipe" clean or delete files on their computers.

221.     Leyburn and Chesapeake and Serowka, and all of Serowka's entities have benefited from the illegal conduct of Mancini, North and Thompson.

222.     Mancini's, North's, and Thompson's conduct constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

223.     WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully requests judgment against Defendants Mancini, North, Thompson, Leyburn, Serowka and Chesapeake for all damages permitted by 18 U.S.C. §1030, punitive damages, costs of suit, equitable relief, and all other relief the Court deems appropriate.

## COUNT XV – PRELIMINARY AND PERMANENT INJUNCTION

### Against All Defendants (except Kathleen Mancini)

224.     Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

225.     By virtue of the above, Kappe is entitled to a preliminary and permanent injunction requiring the return of and prohibiting the use, dissemination or disclosure, directly indirectly, of, *inter alia*:

226.     Kappe data and information copied or obtained through any means by or on behalf of any defendant;

227.     Kappe data and information copied or obtained through any means from any other source;

228.     Kappe has no adequate remedy at law to prevent additional damage from the further use or disclosure of its data and information.

229.     Kappe will suffer irreparable harm if it is not granted the relief requested herein.

44

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully requests a preliminary and permanent injunction as set forth above, and such other relief as the Court deems appropriate.

## COUNT XVI:  INJURIOUS FALSEHOOD/TRADE LIBEL

### Against Defendants Mancini, North, Serowka and Thompson

230.    Plaintiff incorporates by reference as part of this Count all averments of this complaint, both preceding or after this Count, as though more fully set forth herein again at length.

231.    Mancini, North, Serowka and Thompson have repeatedly published false statements to, *inter alia,* entities represented by Kappe, engineers, owners and, upon information and belief Kappe employees, (and such other persons and entities as may be revealed in the future), for the purposes of disparaging the capabilities and abilities of Kappe, including, especially its officers and directors, thereby causing Kappe to suffer pecuniary losses, as set forth above.

232.    Mancini's, North's, and Thompson's false statements include, *inter alia*, that Kappe management are "old", that Kappe representatives have no capabilities, that Kappe has become lazy and incompetent in the representation of the equipment manufacturers, and that Kappe's' long-term existence is in doubt, and other false statements not now known to Kappe at this time.

233.    Mancini, North, and Thompson all intended the above false statements to cause Kappe to suffer pecuniary loss, and Mancini's, North's, and Thompson's should have recognized that the false statements would result in pecuniary loss to Kappe.

#1447011v6 1121-48

234.     Kappe has suffered pecuniary loss as the result of the aforesaid conduct, as described above, including the loss of the representation of manufactures, completely, or in territories in which Kappe previously was the manufacture's exclusive representative.

235.     Mancini, North, and Thompson knew their statements were false, or acted in reckless disregard of their truth or falsity.

236.     Mancini, North, and Thompson willfully and maliciously intended their false statements to cause harm to Kappe, or recklessly disregarded the harm that his conduct would cause to Kappe.  For these reasons and the other reasons set forth above, Mancini, North, and Thompson are liable to Kappe for punitive damages.

WHEREFORE, Plaintiff Kappe Associates, Inc. respectfully requests judgment against Defendants Mancini, North, Thompson, Leyburn and Serowka for compensatory damages reasonably estimated to be in excess of $1.0 million, punitive damages, and such other relief as the Court may appropriate.

> **POWELL, TRACHTMAN, LOGAN,
> CARRLE & LOMBARDO, P.C.**
>
> Paul A. Logan, Esquire
> 475 Allendale Road, Suite 200
> King of Prussia, PA  19406
> Tel: (610) 354-9700/Fax: (610) 354-9760
>
> *Attorneys for Plaintiff Kappe Associates, Inc.*

Dated:  April 23, 2015

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of twelve on all issues so triable.

46

# EXHIBIT "A"

| Name | Case Name | | | What happens with Kappe |
|---|---|---|---|---|
| Type | LLC - MBE | LLC - | LLC | May Loose Oppurtinity with Lakeside |
| Business | Sub Contractor | SBR manfacturer | Manufacturer Rep | George May Retire |
| State | Maryland | Nevada | Maryland | Others May Leave Kappe |
| Owners | Selena 51%, Kathy 24.5%, Jason 24.5% | Jason 33.3%, Jeff 33.3%, Daniel 33.3% | Jason 33.3%, Jeff 33.3%, Daniel 33.3% | Give the MBE Time to Mature |
| Business Address | 1065 Longwood Ave, Cumberland, MD | NV Registered Agent | 1065 Longwood Ave, Cumberland, MD | Increase Relationships with Principals |
| Registered Agent | Yes, MD | Yes, NV | Yes, MD | Add Principals not associated with Kappe |
| Profits | Thompsons 1/3, Norths 1/3, and Mancinis 1/3 | Thompsons 1/3, Norths 1/3, and Mancinis 1/3 | Thompsons 1/3, Norths 1/3, and Mancinis 1/3 | |
| Taxed As | LLC | LLC | LLC for now, possibly change to S-Corp | |
| Next Steps | Articles of Organization ASAP, (Selena and Jason) | Articles of Organization ASAP, (Selena and Jason) | Articles of Organization ASAP, (Selena and Jason) | |
| Next Steps | Articles to the Lawyer, obtain his Operating Agreement (Daniel and Selena) | Articles to the Lawyer, obtain his Operating Agreement (Daniel and Selena) | Articles to the Lawyer, obtain his Operating Agreement (Daniel and Selena) | |
| Next Steps | Amend Operating Agreement, Lawyer Review (Jeff and Selena) | Amend Operating Agreement, Lawyer Review (Jeff and Selena) | Amend Operating Agreement, Lawyer Review (Jeff and Selena) | |
| Next Steps | Send Operating Agreement to MBE for Review (Selena) | | | |
| Next Steps | File LLC | File LLC | File LLC | |
| Next Steps | Business Plan (Selena and Jason), can be done concurrently will other steps | Business Plan (Selena and Jason), can be done concurrently will other steps | Business Plan (Selena and Jason), can be done concurrently will other steps | |
| Next Steps | Make Sick Money | Make Sick Money | Make Sick Money | |
| Next Steps | Website Developed | Website Developed (Lakeside Innovatech, not our LLC) | Website Developed | |

| | Gross per Equipment | Gross per Parts |
|---|---|---|
| MBE | 100 | 0 |
| ABS | 150 | 100 |
| Trojan | 150 | 100 |
| Ka Systems | 100 | 0 |
| Lakeside | 70 | 0 |
| | | |
| Total | 570 | 200 |
| | | 770 |

| |
|---|
| Daniel discuss Lakeside with Ed |
| Jeff investigates Lakeside |
| Selena sign up for MBE magazine |
| Jason read Business Plan Book |
| Daniel Discuss KA System plan with Lawyer |

# EXHIBIT "B"

*Jason North*

October 25, 2013

Kappe Associates, Inc.
100 Wormans Mill Ct.
Frederick, MD 21701
Attn:   Mr. George Salovich
        Mr. Chad Fenstemaker
        Mr. David Kachman


Gentlemen:

Please accept this letter as notification that I am resigning my employment with Kappe Associates effective immediately.

The Ford Expedition I had been assigned is parked and locked in the side parking lot.  You will find two sets of keys in the automobile center console for my vehicle and Jeff's. Please use the remote entry pad on the driver's side door to enter the car. **The Code is 53707.**  Inside the car you will find the following items:

-One case with a USB drive containing MD projects and some paper files for recently bid "open" projects.
-Apple Phone with case and charger
-Assorted sales literature and samples

I would prefer to keep my computer; it is full of family photos etc. I think that $800 would be a fair price for a used Mac Computer. If this is OK, you can take this out of my final paycheck. If you want the computer instead, let me know and I will be gladly Fedex it to you.

I wanted to point out that I have three open projects. Each should have a paper file and electronic file:

**New Cumberland, MD:** This is a military project. The information is available FBO website. The engineer is Elik Livay of Gannett Fleming Baltimore. The project has bid several months ago, but to my knowledge, the low bidder has not yet been announced. We bid ABJ on the traditional SBR, ABS pumps, and Trojan UV. I believe that ABJ was low with my bid. ABJ is off spec with fixed diffusers and must get approved by the owner, but I think it should go through. In order to win the UV, you will probably have to switch from a 3000 plus to a PTP. That is comparable to the competitors; they were much lower in price.

**Queenstown, MD:** This is project was won by Wickersham Contractors and the PM is Brad. They are interested in talking when they get an official award of the project. We bid A3 as an alternate, Trojan UV, and ABS pumps and mixers. We were low on the UV and mixers, and very low on the MBR. However, it must be approved by the engineer, Jason Lytle, of GMB Baltimore.

**Charlotte Hall, MD:** The engineer is Anuj Jain of Hatch Mott, Baltimore. We bid A3 as an alternate. ABS is specified for the pumps, but they are included in the A3 scope. **This project bids on November 1st**, this Friday. You need to get pricing from Jens and give out pricing. The scopes are already out; there only seems to be three bidders.

I appreciate the opportunities that have been provided during my time at Kappe Associates.

Sincerely,

Jason North

**Jeffrey P. Mancini**
**5609 Powell Grove Terrace**
**Midlothian, VA 23112**

October 25, 2013

Kappe Associates, Inc.
100 Wormans Mill Ct.
Frederick, MD 21701
Attn:   Mr. George Salovich
        Mr. Chad Fenstamaker
        Mr. David Kachman

Gentlemen:

Please accept this letter as notification that I am resigning my employment with Kappe Associates effective immediately.

The Chevrolet Traverse I had been assigned is parked and locked in the side parking lot.  You will find two sets of keys in the automobile previously assigned to Mr. Jason North.  Inside the Traverse you will find the following items:

-Sony Vaio laptop computer.  All active projects are contained in the file titled c:\aaaaaprojects
-Apple IPad II
-Printer
-Assorted sales literature and samples

I request that any future correspondence and termination paperwork (401K distribution, COBRA forms, etc.) be handled via USPS to my home address listed above.

I appreciate the opportunities that have been provided during my time at Kappe Associates.

Sincerely,

Jeffrey P. Mancini

# EXHIBIT "C"

MICHAEL G. TRACHTMAN
PAUL A. LOGAN**◇
GUNTHER O. CARRLE*
BRUCE D. LOMBARDO
NEIL P. CLAIN, JR.*
JONATHAN K. HOLLIN
DAVID T. BOLGER
RICHARD J. DAVIES*◇
STEVEN G. BARDSLEY*
FRANK S. NOFER*
ERIC P. WILENZIK*
ANTHONY S. POTTER*
FREDERICK M. BREHM*
DAVID M. BURKHOLDER
DENNIS P. HERBERT*
GEORGE T. REYNOLDS*
MARY J. PEDERSEN*
MICHAEL S. MCCARTER*
MICHAEL J. HOOK*
DAVID M. ABIJANAC, JR.
BENJAMIN A. ANDERSEN*
DREW M. ROTHMAN*
JASON S. KARASIK*
MICHAEL W. KULAKOWSKI*
KEVIN J. DMOCHOWSKY
KIMBERLY A. HOUSE*
MARK D. BONAVITACOLA*
MICHAEL J. ZETTLEMOYER*
MARIA A. SHEA*
DYLAN F. HENRY*

*ALSO ADMITTED IN NJ
▲ALSO ADMITTED IN MD
◇ALSO ADMITTED IN DE
○ALSO ADMITTED IN NY

LAW OFFICES
# POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO
A PROFESSIONAL CORPORATION

475 ALLENDALE ROAD
SUITE 200
KING OF PRUSSIA, PA 19406

(610) 354-9700
FACSIMILE (610) 354-9760
PLOGAN@POWELLTRACHTMAN.COM
WWW.POWELLTRACHTMAN.COM

RALPH B. POWELL, JR.
(1978 – 2010)

OF COUNSEL
RICHARD T. ABELL
MARSHA E. FLORA

114 NORTH SECOND STREET
5TH FLOOR
HARRISBURG, PA 17101
(717) 238-9300
FAX (717) 238-9325

SUITE 350
1814 EAST ROUTE 70
CHERRY HILL, NJ 08003
(856) 663-0021
FAX (856) 663-1590

651 HOLIDAY DRIVE
FOSTER PLAZA 5
PITTSBURGH, PA 15220
(412) 250-2632
FAX (412) 250-4804

April 28, 2014

PLEASE REPLY TO:  KING OF PRUSSIA

*Via Facsimile, Email and Certified Mail, Return Receipt Requested*

Chesapeake Environmental Equipment, LLC
199 Overlook Road
Morgantown, PA  19543
ATTN: Jason North, President
          Jeff Mancini, Vice President
          Nathan Leyburn, Vice President

Re:      Kappe Associates, Inc.

Gentlemen:

As most of you know, this firm is counsel to Kappe Associates, Inc. ("Kappe.")

We have investigated the departures of Mr. Mancini and Mr. North from Kappe, the formation of Chesapeake Environmental Equipment, LLC ("CEE") and the action of CEE before and after CCE's formation.

The purpose of this correspondence is as follows:

- You are hereby provided notice that Kappe will be asserting it rights in an appropriate legal forum against all responsible parties for damages and injunctive relief.  You are hereby advised to place a litigation hold on all records (both hard copy and electronic) related to CEE, and all pre-formation and post-formation actions of everyone associated with CEE.  These documents will be sought in discovery pursuant to the governing rules of civil procedure of the forum selected by Kappe.  Be advised that the destruction, alteration or modification of any of these documents will be viewed by Kappe as serious conduct, at least reaching the level of "spoliation."

#1344788v1 9000-01

Chesapeake Environmental Equipment
April 28, 2014
Page 2

- You are hereby provided with this written opportunity for CEE to voluntarily halt all offending actions, including any further communications with Kappe principals and clients. We are providing this opportunity so as to mitigate Kappe's damages.

- You are hereby provided with this written opportunity so that CEE can immediately withdraw all false and misleading statements to third parties and any misleading information appearing on CEE's website and/or the documents that CEE has been providing to third parties, including its listing of purported principals.

Please advise us of the name of your attorneys, as we will be taking appropriate steps shortly pursue litigation and are willing to discuss procedural matters regarding service of Kappe's lawsuit.

Very truly yours,

Paul A. Logan

PAL/lrs

cc:    Kappe Associates, Inc.

#1344788v1 9000-01